TULPPO v ONTONAGON COUNTY

Docket No. 151277. Submitted January 18, 1994, at Grand Rapids.
     Decided October 17, 1994, at 9:15 A.M. Leave to appeal sought.

     Robert C. Tulppo sought an open award of worker's compensation
     benefits for wage loss attributable to his honorable discharge
     from the Michigan National Guard following an ankle injury
     sustained in the course of his primary employment as an
     Ontonagon County sheriff's deputy. The county voluntarily paid
     worker's compensation benefits for wage loss related to Tulp-
     po's employment with the county. A worker's compensation
     magistrate decided that Tulppo's service in the National Guard
     was not employment that is covered by the Worker's Disability
     Compensation Act. The Worker's Compensation Appellate Com-
     mission affirmed. Tulppo appealed by leave granted.

     The Court of Appeals *held:*

     Section 371 of the worker's compensation act, MCL 418.371;
     MSA 17.237(371), pursuant to which weekly wage loss is deter-
     mined, provides that weekly wage loss is to be based on the
     impairment of the employee's earning capacity in the employ-
     ments covered by the act in which the employee was working
     at the time of the personal injury. Section 151, MCL 418.151;
     MSA 17.237(151), expressly lists the state as an employer
     subject to the act, and § 161, MCL 418.161; MSA 17.237(161),
     includes persons in the service of the state under any appoint-
     ment or contract of hire as employees subject to the act. The
     National Guard is a component of the state militia, and as such
     is a state institution subject to the jurisdiction and laws of the
     state except where controlled by federal laws. Each person
     enlisting in the Michigan National Guard must sign an enlist-
     ment contract and subscribe to an oath to defend the United
     States and Michigan Constitutions. This contractual obligation
     and oath make an enlistee a person in the service of the state
     under § 161 of the worker's compensation act. Accordingly,
     members of the Michigan National Guard who are injured or

REFERENCES

Am Jur 2d, Workers' Compensation §§ 181, 423, 424.
See ALR Index under National Guard or Militia; Workers' Compen-
     sation.

killed in the course of other concurrent employment covered by the worker's compensation act are entitled to worker's compensation benefits for wage loss related to all covered employment, including service in the National Guard.

Reversed.

WORKER'S COMPENSATION — WEEKLY WAGE LOSS — MULTIPLE EMPLOYMENT — MICHIGAN NATIONAL GUARD.

Service in the Michigan National Guard is employment covered by the Worker's Disability Compensation Act for purposes of determining the weekly wage loss of a National Guard member who is injured or killed in the course of other concurrent employment covered by the act (MCL 418.371; MSA 17.237[371]).

*Tercha & Daavettila* (by *James F. Tercha*), for Robert C. Tulppo.

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, and *George H. Weller,* Assistant Attorney General, for Ontonogan County and Accident Fund of Michigan.

Amicus Curiae:

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, and *Angelita Espino,* Assistant Attorney General, for Second Injury Fund.

Before: MACKENZIE, P.J., and HOLBROOK, JR., and D. A. BURRESS,* JJ.

PER CURIAM. Plaintiff appeals by leave granted from a March 20, 1992, order of the Worker's Compensation Appellate Commission, affirming a worker's compensation magistrate's decision that denied plaintiff compensation for wage loss sustained in his second job as a sergeant in the Michigan National Guard. We reverse.

Plaintiff was injured in the course of his full-

---

* Circuit judge, sitting on the Court of Appeals by assignment.

time employment as a deputy sheriff with the Ontonagon County Sheriff's Department on August 2, 1983, when he stepped into a hole and severely twisted his right ankle while inspecting a campsite. Following a period of conservative treatment for the injury, plaintiff underwent surgery on his ankle in October 1984, and received voluntary compensation payments for time lost from work. Plaintiff continued to perform his duties as a deputy sheriff, but pain and swelling in his ankle kept him from completing all the physical requirements of National Guard service. Consequently, he was honorably discharged on medical grounds from the National Guard in November 1986. He remained capable of performing his duties with the sheriff's department and in fact was promoted to undersheriff in 1989.

Plaintiff sought an open award of compensation for wage loss commencing from his 1986 discharge from the National Guard. Following a hearing, the magistrate found that plaintiff's wages from the National Guard could not be considered in computing his worker's compensation wage-loss benefits because § 371(1) of the Worker's Disability Compensation Act (WDCA), MCL 418.101 et seq.; MSA 17.237(101) et seq., limits wage-loss benefits to loss of wage-earning capacity in employments covered by the act. In concluding that National Guard service was not an employment covered by the act, the magistrate noted that the WDCA lacked any reference to the federal government as a covered employer or to members of the National Guard as covered employees in §§ 151(1) and 161, MCL 418.151(1); MSA 17.237(151)(1) and MCL 418.161; MSA 17.237(161), respectively.

In his appeal to the WCAC, plaintiff argued that his wage loss from the National Guard was covered by the WDCA because his injury arose out of a

covered employment. Plaintiff also claimed that the denial of compensation for wage loss from the National Guard constituted a denial of equal protection of the law. The WCAC affirmed, adopting the magistrate's decision, and declined to consider plaintiff's equal protection argument.

I

A

On appeal to this Court, plaintiff asserts that § 372 of the WDCA, MCL 418.372; MSA 17.237(372), unlike § 371(1), contains no exclusion of the type of employments that may be considered for purposes of determining wage loss, and that only wages that are reported to the Internal Revenue Service may be considered. Plaintiff maintains that his National Guard wages must be considered in computing weekly wage loss because that income is reported to the IRS. We find this argument to be unpersuasive.

Section 372 of the WDCA provides in relevant part:

(1) If an employee was engaged in more than 1 employment at the time of a personal injury or a personal injury resulting in death, the employer in whose employment the injury or injury resulting in death occurred is liable for all the injured employee's medical, rehabilitation, and burial benefits. Weekly benefits shall be apportioned as follows:

(a) If the employment which caused the personal injury or death provided more than 80% of the injured employee's average weekly wages at the time of the personal injury or death, the insurer or self-insurer is liable for all of the weekly benefits.

* * *

(2) For purposes of apportionment under this

section, only wages which were reported to the internal revenue service shall be considered, and the reports of wages to the internal revenue service are conclusive for the purpose of apportionment under this section. [MCL 418.372; MSA 17.237(372).]

Section 372 provides a method for allocating the burden of paying an employee's total wage loss among an employee's concurrent employers in certain cases. Here, for example, the county was liable for plaintiff's entire weekly benefits because his employment with the sheriff's department provided more than eighty percent of his total average weekly wages at the time of his injury.[1] MCL 418.372(1)(a); MSA 17.237(372)(1)(a).

Accordingly, we cannot accept plaintiff's argument that § 372 makes any employment for which a federal tax has been imposed an employment covered by the act for purposes of calculating wage loss.

B

We next turn to § 371 of the WDCA, which is used to determine weekly wage loss and provides in pertinent part:

(1) The weekly loss in wages referred to in this act shall consist of the percentage of the average weekly earnings of the injured employee computed according to this section as fairly represents the proportionate extent of the impairment of the employee's earning capacity *in the employments covered by this act* in which the employee was working at the time of the personal injury. [MCL 418.371; MSA 17.237(371). Emphasis added.]

---

[1] The parties stipulated below that plaintiff's average weekly wage loss from the sheriff's department was $347.94, while his average weekly wage loss from the National Guard was $48.

The language, "covered by this act," was added as a result of 1982 PA 32. In order to determine whether "weekly loss in wages" includes plaintiff's income from the National Guard, we must decide whether National Guard service is employment covered by the WDCA. This is an issue of first impression in this state.

The WDCA does not expressly define the phrase "employments covered by this act." However, § 111 of the act, MCL 418.111; MSA 17.237(111), provides that "[e]very employer, public and private, and every employee" is subject to the provisions of the act unless otherwise specifically provided elsewhere in the act. Section 151 of the act expressly lists the state, and each county, city, township, incorporated village, and school district as employers subject to the act. Likewise, the definition of employee in § 161 of the act includes persons "in the service of the state, a county, city, township, village or school district, under any appointment, or contract of hire, express or implied, oral or written."

Although the magistrate and the WCAC held that National Guard service was not covered employment because the federal government was not listed as a covered employer, we do not find it necessary to look beyond the language of the statute. Instead, we hold that, for the limited purpose of determining average weekly wage loss under § 371 of the WDCA, Michigan National Guard members are state employees and, consequently, fall within the express language of §§ 151 and 161.

The National Guard is a component of the state militia and as such is a state institution subject to the jurisdiction and laws of the state except where controlled by federal laws. *Houston v Moore,* 18 US (5 Wheat) 1; 5 L Ed 19 (1820). See generally 53

Am Jur 2d, Military, and Civil Defense, §§ 30-45, pp 971-984. The federal constitution authorizes Congress to provide for activating the militia in times of national emergency, and to provide for organizing, arming, and disciplining the militia, as well as determining the amount of their pay. US Const, art I, § 8, cls 15-16. The federal constitution expressly reserves to the states the authority to appoint officers and to train the militia in accordance with federal law. US Const, art I, § 8, cl 16. These constitutional provisions have been interpreted to provide that the states share concurrent legislative power with Congress to organize, control, and discipline the militia. *Moore, supra; Hamilton v Regents of University of California,* 293 US 245; 55 S Ct 197; 79 L Ed 343 (1934), reh den 293 US 633 (1934). When the state militia is not in federal service, the Governor, as commander in chief, may call it out in times of necessity or emergency in the state. Const 1963, art 5, § 12; MCL 32.551; MSA 4.678(151).

Pursuant to federal and state law, each person enlisting in the Michigan National Guard must sign an enlistment contract and subscribe to an oath to defend the federal and Michigan Constitutions. 32 USC 304; 10 USC 3261; MCL 32.625; MSA 4.678(225). Plaintiff voluntarily was in the service of the state and consequently was subject to its direction and control, thereby satisfying a principal portion of the economic reality test that is used to determine the existence of an employment relationship under the worker's compensation statute. See *Askew v Macomber,* 398 Mich 212, 217-218; 247 NW2d 288 (1976). Consonant with the general rule that the WDCA is to be liberally construed to grant rather than deny benefits, *Bower v Whitehall Leather Co,* 412 Mich 172, 191; 312 NW2d 640 (1981), we find this contractual

obligation and oath to serve the state sufficient to fall within the broad definition of employee in § 161 of the WDCA: "A person in the service of the state . . . under any appointment, or contract of hire, express or implied, oral or written."

Courts in other jurisdictions have similarly held that the performance of duty or mere enlistment in the National Guard constitutes service rendered under a contract of employment with the state for purposes of their respective worker's compensation statutes. See, e.g., *Bath v Shee-Con, Inc,* 560 So 2d 1289, 1291-1292 (Fla App, 1990) (employee's National Guard earnings were to be included in his average weekly wage because his service in the National Guard was employment within the meaning of Florida's worker's compensation act); *Andrews v State,* 53 Ariz 475; 90 P2d 995 (1939) (National Guard service was "appointment or contract of hire" with the state if the provisions of worker's compensation law were the only applicable law).

There is no dispute that the federal government provides virtually all funding, material, and leadership for state National Guard units. See *Perpich v Dep't of Defense,* 496 US 334, 338-339; 110 S Ct 2418; 110 L Ed 2d 312 (1990); *Moore v Dep't of Military Affairs,* 398 Mich 324, 328; 247 NW2d 801 (1976). We do not find that this fact mandates a different result. In *DeMara v Governor,* 183 Mich App 87; 454 NW2d 401 (1990), this Court considered the effect of federal funding of National Guard units in the context of an age discrimination claim brought pursuant to the state Civil Rights Act and concluded:

Nor can we agree that because the National Guard is basically funded with federal money, its members are subject to different rules under the

[Civil Rights] [A]ct than other state employees. If this were so, personnel in other units of state government whose major source of revenue is derived from federal funds would be similarly affected. For example, the Michigan Employment Security Commission in the Department of Labor is almost exclusively federally funded. Likewise, the Michigan State Housing Development Authority and major components of the Department of Social Services are primarily financed from federal funds rather than from state funds. [*Id.* at 93.]

The *DeMara* Court assumed that National Guard members were state employees governed by both federal and state law. *Id.* at 92.

Pursuant to § 103 of the Michigan Military Act, MCL 32.501 *et seq.*; MSA 4.678(101) *et seq.*, the Legislature expressed an intent that any state law relating to the National Guard be construed to conform with federal law and that where a matter is not covered by federal law, "any law or regulation of this state shall be in full force and effect." MCL 32.503; MSA 4.678(103). Thus, we find that, in the absence of controlling federal law, the Legislature intended to provide worker's compensation benefits to National Guard members who are injured or killed in the course of other concurrent employment covered by the act. We hasten to add that a National Guard member who is injured, disabled, or killed in the course of federal or state service, including required training duty, is limited to compensation benefits available under the Federal Employees' Compensation Act, 5 USC 8101 *et seq.*, or the Michigan Military Act, MCL 32.519; MSA 4.678(119), respectively. This holding is in accord with our state's long-held general rule disfavoring double recoveries. See *Thick v Lapeer Metal Products,* 419 Mich 342, 347; 353 NW2d 464 (1984). Thus, our holding today that National Guard service is covered employment under this

state's worker's compensation statute is strictly limited to the facts as presented in this case.[2]

Accordingly, we conclude that, as a matter of law, wages earned in the National Guard are to be included in the computation of weekly wage-loss benefits under § 371 of the WDCA.

II

In light of our holding above, we need not address plaintiff's equal protection challenge.

Reversed.

---

[2] We recognize that the Attorney General has previously concluded that National Guard members are not employees of the state for purposes of the state employees' retirement system because they have their own retirement system and because National Guard service is not truly employment but is the discharge of a duty or obligation owed to the sovereign. See OAG, 1961-1962, No 3666-A, p 611 (December 11, 1962). We find it notable that the New York and Illinois cases relied on by the Attorney General involved *activated* National Guard members who were found not to be state employees for purposes of the respective states' worker's compensation statutes. As we have stated, National Guard members who are injured or killed in active service are already covered under applicable provisions of military law.