BENDION v PENOBSCOT MANAGEMENT COMPANY (ON REMAND)

Docket No. 194513. Submitted April 2, 1997, at Detroit. Decided August 29, 1997, at 9:10 A.M. Leave to appeal sought.

Alberta Bendion sought worker's compensation benefits for work-related injuries that kept her from continuing to work for Penobscot Management Company as a janitor and for Fred and Elaine Kamienny as a domestic. A worker's compensation magistrate determined that the plaintiff was partially disabled as a result of injuries sustained in the course of employment by Penobscot; that although the plaintiff's job as a domestic was not covered employment under § 118(2) of the Worker's Disability Compensation Act, MCL 418.118(2); MSA 17.237(118)(2), wages from that job could be considered pursuant to § 371 of the WDCA, MCL 418.371; MSA 17.237(371), as part of her average weekly wage; and that Penobscot, despite providing less than eighty percent of the plaintiff's average weekly wage, must pay all of the plaintiff's worker's compensation benefits but can seek reimbursement from the Second Injury Fund pursuant to § 372(1)(b) of the WDCA, MCL 418.372(1)(b); MSA 17.237(372)(1)(b), for that portion of benefits attributable to the plaintiff's wages from domestic service. The Worker's Compensation Appellate Commission affirmed the magistrate's finding of partial disability, but remanded for recalculation of the plaintiff's average weekly wage and worker's compensation benefits, concluding that the plaintiff's wages from domestic service could not be considered in determining her average weekly wage because domestic service was not covered employment under the WDCA. On remand, the magistrate determined that the Second Injury Fund had standing to raise the issue whether domestic service was covered employment under the WDCA and recalculated the plaintiff's average weekly wage and worker's compensation benefits as directed by the commission. The commission affirmed the magistrate's decision on remand. The Court of Appeals denied the plaintiff's application for leave to appeal. The Supreme Court, in lieu of granting leave, remanded the case to the Court of Appeals for consideration as on leave granted. 451 Mich 874 (1996).

On remand, the Court of Appeals *held*:

1. Liability by the Second Injury Fund for that portion of the plaintiff's original worker's compensation award attributable to

wages earned as a domestic gave the Second Injury Fund standing to challenge the inclusion of income earned from domestic service in the plaintiff's average weekly wage.

2. Section 371(1) of the WDCA, which refers to wages from employment covered by the WDCA in defining "weekly loss in wages," and § 371(2) of the WDCA, which refers to weekly wage earned in all employment in defining "average weekly wage," when read in harmony, require that average weekly wage be determined by including only wages earned in employment covered by the WDCA.

Affirmed.

WORKER'S COMPENSATION — MULTIPLE EMPLOYMENT — AVERAGE WEEKLY WAGE.

The average weekly wage of a worker who sustains a disabling work-related injury while employed in more than one job, for purposes of determining the amount of worker's compensation benefits that may be awarded, consists of only those wages that are earned in employment covered by the Worker's Disability Compensation Act (MCL 418.371; MSA 17.237[371]).

*Sachs, Waldman, O'Hare, Helveston, Bogas & McIntosh, P.C.* (by *Granner S. Ries*), for Alberta Bendion.

*Kluczynski, Girtz, Zamler & McCubbrey, P.C.* (by *Ronald A. Weglarz*), for Penobscot Management Company and American Motorists Insurance.

*Lacey & Jones* (by *Gerald M. Marcinkoski*), for Wausau Insurance Company.

*Frank J. Kelley*, Attorney General, *Thomas L. Casey*, Solicitor General, and *Morrison Zack*, Assistant Attorney General, for the Second Injury Fund.

ON REMAND

Before: MARKEY, P.J., and BANDSTRA and HOEKSTRA, JJ.

PER CURIAM. This case has been remanded by our Supreme Court for consideration as on leave granted.

451 Mich 874 (1996). Plaintiff Alberta Bendion appeals a decision by the Worker's Compensation Appellate Commission (WCAC) affirming the supplemental decision of the magistrate awarding benefits based on an average weekly wage calculated on covered employment only. We affirm.

At issue in this case is what employment must be included in the calculation of the average weekly wage. In 1979, plaintiff began working full-time for defendant Penobscot Management Company as a janitor. In 1981, she began working three days a week for Fred and Elaine Kamienny as a domestic. Plaintiff stopped working for Penobscot on September 16, 1988, because of back and leg problems resulting from work-related injuries sustained on June 9, 1986, and December 6, 1987. She also stopped working for the Kamiennys because of pain from those injuries.

Plaintiff sought worker's compensation benefits. In a decision mailed on March 3, 1992, the magistrate found that plaintiff was partially disabled as a result of injuries sustained during the course of employment by Penobscot. While concluding that, pursuant to MCL 418.118(2); MSA 17.237(118)(2), plaintiff's work as a domestic for the Kamiennys was not covered employment under the Worker's Disability Compensation Act (WDCA), MCL 418.101 *et seq.*; MSA 17.237(101) *et seq.*, the magistrate determined that the wages plaintiff earned in that employment could be used to calculate her average weekly wage. The magistrate found plaintiff's average weekly wage to be $467.93. The magistrate calculated that plaintiff's employment with Penobscot provided less than eighty percent of her average weekly wage for the injury dates in 1987 and 1988, and that Penobscot's proportionate liability

for the benefits for those dates would be 71.15 percent of the total benefit due plaintiff. Although Penobscot was required to pay one hundred percent of the benefit to plaintiff, it was entitled to seek reimbursement from the Second Injury Fund (SIF) under MCL 418.372(1)(b); MSA 17.237(372)(1)(b) for the portion of the benefit for which it was not liable.

Defendants appealed to the WCAC. In a decision entered on March 31, 1994, the WCAC affirmed the finding of partial disability, but found that the magistrate erred in including the wages plaintiff earned as a domestic in the calculation of her average weekly wage. That employment was not covered employment under § 118 of the WDCA. The WCAC modified the magistrate's decision to preclude Penobscot and its insurance carriers from seeking reimbursement from the SIF. The WCAC remanded the case to the magistrate for recalculation of plaintiff's average weekly wage and benefits due. In a decision after remand, the WCAC affirmed the magistrate's supplemental decision and found that the SIF had standing to raise the issue of covered employment because it was directly affected by the resolution of that issue.

Relying on *Sharpe v Angora Enterprises*, 185 Mich App 32, 38-39; 460 NW2d 261 (1990), plaintiff initially argues that the SIF had no standing to raise an issue concerning the calculation of the average weekly wage because the SIF could not be ordered to pay benefits directly to the claimant. We disagree. The WCAC correctly concluded that the SIF had standing to raise the issue of inclusion of plaintiff's wages earned from her work as a domestic in the calculation of the average weekly wage. Pursuant to § 372(1)(b), the SIF must reimburse the employer for a portion of the ben-

efits paid to the employee if the employment that caused the injury provided eighty percent or less of the employee's average weekly wage. Inclusion of wages from multiple sources in the calculation of the average weekly wage would reduce the defendant employer's percentage of that wage, and would increase the likelihood that the SIF's interest would be adversely affected. The SIF's interest gave it standing to raise the issue. *House Speaker v Governor*, 443 Mich 560, 572; 506 NW2d 190 (1993).

Turning to the merits of plaintiff's claims, MCL 418.371; MSA 17.237(371) reads in pertinent part:

> (1) The weekly loss in wages referred to in this act shall consist of the percentage of the average weekly earnings of the injured employee computed according to this section as fairly represents the proportionate extent of the impairment of the employee's earning capacity in the employments covered by this act in which the employee was working at the time of the personal injury. The weekly loss in wages shall be fixed as of the time of the personal injury, and determined considering the nature and extent of the personal injury. The compensation payable, when added to the employee's wage earning capacity after the personal injury in the same or other employments, shall not exceed the employee's average weekly earnings at the time of the injury.
>
> (2) As used in this act, "average weekly wage" means the weekly wage earned by the employee at the time of the employee's injury in all employment, inclusive of overtime, premium pay, and cost of living adjustment, and exclusive of any fringe or other benefits which continue during the disability. Any fringe or other benefit which does not continue during the disability shall be included for purposes of determining an employee's average weekly wage to the extent that the inclusion of the fringe or other benefit will not result in a weekly benefit amount which is greater than ⅔ of the state average weekly wage at the time of injury.

The average weekly wage shall be determined by computing the total wages paid in the highest paid 39 weeks of the 52 weeks immediately preceding the date of injury, and dividing by 39.

Plaintiff's principal argument is that the WCAC erred in holding that the wages she earned as a domestic could not be used to calculate her average weekly wage. While not contending that work as a domestic is covered employment under the WDCA, plaintiff asserts that a proper reading of § 371, and especially of § 371(2), requires that wages earned in "all employment" be used to calculate the average weekly wage, regardless of whether all such employment is covered employment under the WDCA. Plaintiff states that § 371(1) addresses the principle under which a claimant is entitled to receive benefits, i.e., a loss of wage-earning capacity in covered employment. Although § 371(1) refers to employment "covered by this act," those words of limitation do not appear in § 371(2). Section 371(2) refers to "all employment" when discussing what wages are to be considered when the average weekly wage is calculated. Plaintiff asserts that § 371(1) and § 371(2) do not conflict because they address different issues, i.e., entitlement to benefits versus calculation thereof.

Plaintiff relies on *Tulppo v Ontonagon Co*, 207 Mich App 277; 523 NW2d 883 (1994). In *Tulppo, supra* at 278-279, the plaintiff was injured during the course of employment covered by the WDCA. While he was able to resume his regular employment duties, residual effects of the injury necessitated that he be honorably discharged from the Michigan National Guard. *Id.* at 279. The plaintiff sought worker's compensation benefits for lost National Guard wages. *Id.* The magistrate

relied on § 371(1) and found that National Guard wages could not be considered when calculating the plaintiff's average weekly wage because National Guard service was not covered employment. *Id.* The WCAC affirmed the magistrate's decision. *Id.* at 280. This Court reversed the WCAC's decision and held that for the limited purpose of calculating the average weekly wage under § 371(1), National Guard members are state employees. *Id.* at 282, 286. Because the state is an employer subject to the WDCA, MCL 418.151; MSA 17.237(151), National Guard wages could properly be included in the calculation of the average weekly wage. *Id.* at 283. In the present case, plaintiff concludes that *Tulppo* stands for the proposition that employment need not be covered under the WDCA in order for wages earned in that employment to be included in the calculation of the average weekly wage.

Plaintiff also relies on *Lawrence v Toys R Us*, 453 Mich 112; 551 NW2d 155 (1996). In that case, the plaintiff held dual employment. *Id.* at 115. She sustained a work-related injury that prevented her from continuing in her first job, but did not prevent her from continuing in the second job. *Id.* Our Supreme Court held that under § 371(2), the average weekly wage was the wage earned in "all employment," regardless of whether the injury disabled the claimant from all employment. *Id.* at 122-123. The Court stated that in specifying in § 371(2) that the average weekly wage meant wages earned in "all employment," the Legislature did not distinguish between employment in which the employee was injured and employment in which the same employee was not injured. *Id.* at 123. In the present case, plaintiff asserts that § 371(2)

does not distinguish between employment covered by the WDCA and employment not so covered.

After reviewing de novo the statutory subsections at issue, *Long v Chelsea Community Hosp*, 219 Mich App 578, 581-582; 557 NW2d 157 (1996), we hold that the WCAC correctly concluded that wages plaintiff earned as a domestic could not be considered in determining her average weekly wage. Plaintiff improperly attempts to ignore the phrase "covered by this act" in § 371(1). A principal rule of statutory construction holds that every word in a statute has some meaning, *Michigan Millers Mut Ins Co v West Detroit Building Co, Inc*, 196 Mich App 367, 373; 494 NW2d 1 (1992), and that the Legislature is presumed to have intended the meaning plainly expressed in the statute, *Long, supra* at 582. A statute should be interpreted as a whole, and the meaning of one section should be read in harmony with all other sections. *Michigan Millers, supra*. Our Supreme Court has specifically so held with respect to § 371. *Rowell v Security Steel Processing Co*, 445 Mich 347, 356-358; 518 NW2d 409 (1994). When read together, § 371(1) and § 371(2) require that the average weekly wage be determined by including wages earned in all employment covered by the WDCA.

*Tulppo, supra*, does not require a different result. In that case, we found that the plaintiff's work in the National Guard made him a state employee, and that the state was an employer subject to the WDCA. The Court in *Tulppo* did not hold that wages earned in employment not covered by the WDCA could be used to calculate the average weekly wage. Here, plaintiff does not argue that the Kamiennys were employers subject to the WDCA, nor does she argue that her work

as a domestic was covered employment under the WDCA.

Similarly, *Lawrence, supra,* does not support plaintiff's position. Although the Court in *Lawrence* held that the wages the plaintiff earned in both jobs were to be used to calculate her average weekly wage, it was not disputed that both jobs constituted covered employment under the WDCA. *Lawrence* does not address the issue in the present case, i.e., whether the same result obtains if one of the employee's two jobs is not covered employment under the WDCA.

Finally, plaintiff argues that the failure to consider wages from "all employment" in the calculation of the average weekly wage violates her right to equal protection of the laws. Specifically, plaintiff argues that this failure to consider wages from "all employment" bears no rational relation to the object of the WDCA. See *Shavers v Attorney General,* 402 Mich 554, 613-614; 267 NW2d 72 (1978). We disagree. This Court has held that the Legislature has the right to define the benefits to which a worker's compensation claimant is entitled. *Kunde v Teesdale Lumber Co (Amended Opinion),* 55 Mich App 546, 554-558; 223 NW2d 67 (1974). By enacting § 371(1) and § 371(2), the Legislature has done exactly that, and has determined that only wages earned in employment covered by the WDCA are considered when calculating the average weekly wage.

We affirm.