OXLEY v DEPARTMENT OF MILITARY AFFAIRS

Docket No. 111508. Argued April 7, 1999 (Calendar No. 17). Decided
     July 20, 1999.

     Claude Oxley, a civilian technician for the National Guard, sought
       Michigan worker's compensation, alleging continuing disability due
       to work-related injuries. A magistrate denied his claim, ruling that
       he was a federal employee for purposes of the Michigan act. The
       Worker's Compensation Appellate Commission affirmed, conclud-
       ing that Mr. Oxley was limited to the worker's compensation bene-
       fits available under the Federal Employees' Compensation Act. The
       Court of Appeals, NEFF, P.J., and SAWYER and MURPHY, JJ., reversed
       in an opinion per curiam, concluding that Mr. Oxley was both a fed-
       eral and a state employee and was therefore eligible for worker's
       compensation benefits under Michigan's worker's compensation
       act. 227 Mich App 528 (1998) (Docket No. 193940). The department
       appeals.

       In an opinion by Justice TAYLOR, joined by Chief Justice WEAVER,
     and Justices BRICKLEY, CORRIGAN, and YOUNG, the Supreme Court
     held:

       Mr. Oxley, in his capacity as a civilian technician, was not in the
     service of the state and therefore is ineligible for benefits under
     MCL 418.161(1)(a); MSA 17.237(161)(1)(a).

       1. In order to be eligible for Michigan worker's compensation, a
     claimant must be a "covered" employee. The injuries at issue arose
     in the course of his civilian technician work, and 32 USC 709(d)
     explicitly provides that he is a federal employee in his capacity as a
     technician. Because his civilian technician status can be separated
     from his military service with respect to eligibility for state
     worker's compensation benefits, his injuries did not arise in the
     course of employment in the service of the state. Accordingly, he is
     not a covered employee under § 161(1)(a).

       2. The economic reality test examines a number of criteria
     including control, payment of wages, hiring, firing, the maintenance
     of discipline, and common objective to determine who is an
     employer for purposes of the worker's compensation act. The fac-
     tors are viewed together in their entirety under a totality of the cir-
     cumstances test. So viewed, the factors demonstrate that Mr. Oxley

was not a state employee in his capacity as a technician. Under both the statutory language and the economic reality test, Mr. Oxley, in his capacity as a technician, was not in the service of the state of Michigan. Therefore, his employment was not covered under § 161(1)(a) and he is not eligible to pursue benefits under Michigan's worker's compensation act for an injury allegedly suffered in the course of his civilian technician work.

Reversed.

Justice KELLY, joined by Justice CAVANAGH, dissenting, stated that, although the National Guard Technician Act conferred nominal federal employment status upon National Guard technicians, such technicians are also state employees for purposes of the Worker's Disability Compensation Act. Additionally, applying the economic reality test, an employment relationship existed between the state of Michigan and the plaintiff for purposes of the worker's compensation statute.

The National Guard is a hybrid organization that serves both the federal government and the state within which it is located. On the basis of the record, it is reasonable to conclude that the plaintiff's job, as a computer operator in the Air National Guard, primarily served the state of Michigan, and, thus, that the plaintiff always held the position as a state employee, as well as a nominal federal employee. Further, the Legislature, in MCL 32.700; MSA 4.678(300), intended the state adjutant general to be a state agent, not a federal agent.

*Newton & Emmons, P.C.* (by *Gary C. Newton*), for the plaintiff-appellee.

*Jennifer M. Granholm*, Attorney General, *Thomas L. Casey*, Solicitor General, and *George H. Weller* and *Charles L. Jones*, Assistant Attorneys General, for the defendant-appellant.

TAYLOR, J. At issue is whether plaintiff, Claude Oxley, allegedly injured in the course of his work as a National Guard technician, was a covered employee for purposes of the Worker's Disability Compensation Act (WDCA), MCL 418.101 *et seq.*; MSA 17.237(101) *et seq.* We conclude that Oxley, in his capacity as a civilian technician, was not in the service of the state and

is therefore ineligible for benefits under MCL 418.161(1)(a); MSA 17.237(161)(1)(a) of the WDCA. We accordingly reverse the judgment of the Court of Appeals and reinstate the decision of the Worker's Compensation Appellate Commission (WCAC), which affirmed the magistrate's ruling.

## FACTS AND PROCEEDINGS

Oxley's full-time job during the period at issue was as a National Guard technician. Since 1969, such technicians have been classified as federal employees under 32 USC 709(d). This position required that he be a member of the Michigan Air National Guard. See 32 USC 709(b)(1). As a member of the Michigan Air National Guard, Oxley served one weekend a month plus fifteen days of summer camp each year.

Oxley's technician position involved computer operations. He had received four weeks of training, but felt that he was insufficiently trained and supported in his job. He alleged that the resulting stress caused him to suffer a myocardial infarction on November 13, 1985. While he returned to work after the heart attack, Oxley contended that his return to the same job subjected him to the same stress and resulted in further disability.[1] He was terminated from military service because of medical disqualification on October 17, 1986, and terminated from his federal civil service status on February 27, 1987. He receives federal pension benefits.

On September 27, 1990, Oxley sought Michigan worker's compensation benefits, alleging continuing

---

[1] He alleges subsequent injury dates in 1986 and 1987.

disability due to work-related injuries. However, Oxley did not seek federal worker's compensation benefits for the injuries at issue.[2]

The magistrate denied Oxley's claim for worker's compensation benefits, ruling that he was not an employee covered under Michigan's WDCA. She concluded that Oxley was a federal employee for purposes of the WDCA. In reaching this conclusion, she relied on 32 USC 709, which states that a technician is a federal employee. She noted that Oxley received his pay and annual W-2s from the federal government and that his sick and vacation time and other benefits were provided through the federal civil service system. She also found, significantly, that the state adjutant general, Oxley's supervisor, is a federal employee for purposes of administering technicians.

The WCAC affirmed the magistrate's analysis and conclusion. 1996 Mich ACO 675. Additionally, it acknowledged *Tulppo v Ontonagon Co*, 207 Mich App 277; 523 NW2d 883 (1994), which indicated that wages earned for service in the National Guard should be included in the computation of weekly wage-loss benefits under the WDCA when a claimant is injured in the course of concurrent employment that is covered under the WDCA. However, on the basis of limiting language in *Tulppo*, the WCAC concluded that Oxley was limited to the worker's compensation benefits available under the Federal Employees' Compensation Act.

The Court of Appeals granted leave and reversed. 227 Mich App 528; 575 NW2d 820 (1998). It con-

---

[2] At oral argument before the Court of Appeals, Oxley's counsel acknowledged that while Oxley was entitled to federal worker's compensation benefits, he had not pursued them.

cluded that Oxley was both a federal and a state employee and was therefore eligible for worker's compensation benefits under Michigan's WDCA. It relied on federal authority indicating that 32 USC 709 made technicians "nominal" federal employees for the limited purpose of making them eligible for federal fringe and retirement benefits and for coverage under the Federal Tort Claims Act. It rejected defendant's contention that technicians like Oxley wear two hats—they are civilian federal employees while acting as technicians, but members of the military, arguably employed by the state, while engaging in National Guard duties, i.e., when in military training or actual military service. Rather, the Court of Appeals held that Oxley's work as a technician was military in character and required that he be a member of the National Guard. Applying the economic reality test, it concluded that Oxley was employed by the state because he was voluntarily in the service of the state and subject to its control and direction in his work. It stated that the limiting language in *Tulppo*, relied upon by the WCAC, was dicta. Finally, it noted that Oxley was not receiving federal worker's compensation benefits and that there was accordingly no danger of double recovery, which was the basis of *Tulppo*'s limiting language.

This Court granted leave to appeal. 459 Mich 927 (1998).

### STANDARD OF REVIEW

Whether Oxley was an employee of the state for purposes of Michigan's WDCA is a question of law. This Court has the authority to review questions of law involved in any final order of the WCAC. MCL 418.861;

MSA 17.237(861). This Court reviews questions of law de novo. *Hagerman v Gencorp Automotive*, 457 Mich 720, 727; 579 NW2d 347 (1998).

DISCUSSION

In order to be eligible for Michigan WDCA benefits, a claimant must be a "covered" employee. Oxley contends that he was a covered employee because he was in the service of the state pursuant to MCL 418.161(1)(a); MSA 17.237(161)(1)(a).[3]

Before beginning to analyze whether Oxley was a covered employee under § 161(1)(a),[4] it is helpful to frame the issue by reiterating some facts that are undisputed.

Oxley's allegations in his petition for worker's compensation benefits acknowledge that the injuries at issue arose in the course of his civilian technician work, i.e., his forty hour a week job; not in the course of his military National Guard service, i.e., his service one weekend a month and fifteen days of summer

---

[3] Section 161(1)(a) states in pertinent part:

> As used in this act, "employee" means:
> (a) A person in the service of the state . . . under any appointment, or contract of hire, express or implied, oral or written.

[4] In the proceedings below and in the parties' arguments here, the issue has been articulated as Oxley's eligibility to pursue Michigan WDCA benefits under § 161(1)(a). However, the analysis involves consideration of what work Oxley was engaged in when he sustained his injuries. Accordingly, MCL 418.301(1); MSA 17.237(301)(1), which states in pertinent part, "[a]n employee, who receives a personal injury arising out of and in the course of employment by an employer who is subject to this act at the time of the injury, shall be paid compensation as provided in this act," is also implicated. We recognize that § 301 thus bears on the issue whether Oxley is eligible to pursue WDCA benefits; however, for ease of reference, we will frame the issue as whether he is a covered employee "under § 161(1)(a)" throughout this opinion.

camp each year. Further, both parties agree that, pursuant to 32 USC 709, technicians are federal employees and are under the authority of the state adjutant general.[5] It is undisputed that Oxley's wages were paid by federal funds on a federal paycheck and that his sick and vacation time and other benefits were provided through the federal civil service system. Further, defendant concedes that Oxley was a state employee with respect to his military National Guard duties.

Given these facts, the issue is whether Oxley was exclusively a federal employee or simultaneously a federal employee and a state employee when the injuries at issue arose. It is agreed that if these injuries arose in the course of work as to which he was exclusively a federal employee, Oxley would not be a covered employee under § 161(1)(a) and thus would be ineligible for Michigan WDCA benefits. However, if they arose in the course of work as to which he was both a federal and a state employee, he would be eligible to pursue Michigan WDCA benefits under § 161(1)(a).[6]

---

[5] 32 USC 709(c) and (d) provide:

(c) The Secretary concerned shall designate the adjutants general referred to in section 314 of this title, to employ and administer the technicians authorized by this section.

(d) A technician employed under subsection (a) is an employee of the Department of Army or the Department of the Air Force, as the case may be, and an employee of the United States.

[6] We note that the only issue presently before the Court is Oxley's eligibility to pursue such benefits; whether he can demonstrate the requisite causation, i.e., that his injuries arose "out of and in the course of" his employment, to entitle him to benefits under the WDCA is a separate issue, not yet addressed.

I

As to whether Oxley's civilian technician work can be differentiated from his military National Guard service, Oxley argues that the civilian and military aspects of his work cannot be separated and that he was simultaneously a federal employee and a state employee. Defendant, of course, contends that Oxley's work can be bifurcated into its civilian and military elements. It claims that Oxley was a federal employee in his capacity as a technician and a state employee with respect to his military National Guard service.

The only Michigan case cited by the parties as bearing on this issue is *Tulppo*, 207 Mich App 277. In *Tulppo*, a sheriff, who was also a member of the National Guard, sought Michigan worker's compensation benefits for an injury suffered in the course of his sheriff's duties. There was no dispute that his sheriff position was clearly covered employment under § 161(1)(a). The only question was if, in setting his worker's compensation benefits, the plaintiff's pay for National Guard service should be considered. The *Tulppo* Court answered in the affirmative, holding that "for the limited purpose of determining average weekly wage loss under § 371 of the WDCA, Michigan National Guard members are state employees and . . . fall within the express language of § . . . 161." *Id.* at 282. Thus, the *Tulppo* Court dispositively concluded that where a claimant is injured in the course of covered employment, the claimant's pay for National Guard service may be considered in calculating worker's compensation benefits. While it discussed the Legislature's intent to provide worker's compensation benefits to National Guard members

"injured or killed in the course of *other concurrent employment covered by the act*," the question whether such other concurrent employment is covered by the act, as is at issue here, simply was not before the *Tulppo* Court.[7] 207 Mich App 285. Thus, *Tulppo* provides no guidance regarding whether a technician position constitutes other concurrent employment that is covered by Michigan's WDCA. Nor does *Tulppo* shed any light on the specific question whether Oxley's civilian technician work can be separated from his military National Guard service.

Given the paucity of Michigan authorities addressing the issues we confront, we turn to cases from other jurisdictions for guidance. Some federal cases have indicated a categorical conclusion that the civil and military aspects of a technician position are inseparable. However, even cases taking this approach focus on the fundamentally military elements of the challenges at issue in concluding that technicians' civilian status could not be unraveled from their military service. For example, in *Wright v Park*, 5 F3d 586 (CA 1, 1993), the United States Court of Appeals for the First Circuit affirmed a summary judgment dismissing a technician's claim that his job transfer was retaliation for whistle-blowing. Because a member of the military cannot pursue such a claim,

---

[7] As a point of clarification, we reiterate that *Tulppo* did not involve a claimant injured in the course of any National Guard duties. The *Tulppo* Court nonetheless stated that a National Guard member injured in the course of federal or state service was limited to compensation benefits available under the Federal Employees' Compensation Act or the Michigan Military Act, respectively. 207 Mich App 285. Here, the WCAC relied on this statement as an additional indication that Oxley was not entitled to pursue Michigan worker's compensation benefits. The Court of Appeals correctly observed that this statement of the *Tulppo* Court was dictum. 227 Mich App 534-535.

the plaintiff's ability to proceed turned on whether his civilian work could be separated from his military service. The *Wright* court rejected the plaintiff's proposed "Balkanization of technicians' work" into separate military and civilian elements because it concluded that "the adverse employment action against which appellant inveighs necessarily implicates his military as well as his civilian status." *Id.* at 588-589. *American Federation of Government Employees, AFL-CIO, Local 2953 v Federal Labor Relations Authority,* 235 US App DC 104; 730 F2d 1534 (1984), held that the National Guard was not required to bargain over a union proposal to eliminate consideration of military performance from reduction-in-force actions regarding technicians. In so holding, the court noted that the National Guard Bureau regulation requiring consideration of both civilian and military performance has repercussions on military preparedness. *Id.* at 111, 116. See also *New Jersey Air Nat'l Guard v Federal Labor Relations Authority,* 677 F2d 276 (CA 3, 1982) (holding that the National Guard was not required to bargain over certain conditions of employment with a union representing civilian technicians).

More recent federal cases explicitly hold that the military and civilian aspects of a technician's position can be separated with respect to claims that do not implicate integrally military elements of such positions. In two recent decisions, the United States Court of Appeals for the Ninth Circuit held that title VII of the federal civil rights act applied to National Guard technicians except with respect to personnel decisions "integrally related to the military's unique structure." *Mier v Owens,* 57 F3d 747, 748 (CA 9,

1995); *Gregory v Widnall*, 153 F3d 1071, 1074 (CA 9, 1998). The *Mier* court noted that title VII's protection against employment discrimination applies to civilian employees of the military, but not to military personnel. *Mier* at 749. In order for a technician to be eligible to pursue claims available to civilian employees but not military personnel, it is necessary to bifurcate the technician's civilian work from his military service. Accordingly, *Gregory* and *Mier* indicate that, unless the situation under scrutiny is fundamentally military, the civilian aspect of National Guard technician positions may be differentiated from the military aspect and considered separately.

Careful examination of the facts in these cases provides guidance in identifying when the military and civilian aspects of a technician position cannot be separated. In *Mier*, a technician alleged discrimination and retaliation in 1) the denial of military promotions, 2) suspension from civilian employment resulting from the military promotion denials, and 3) subjection to an investigation. At issue was whether the plaintiff could utilize uniquely civilian remedies, unavailable to military personnel, such as a suit under title VII of the federal civil rights act. The *Mier* court concluded that he could not. It stated that "[m]ilitary promotion is one of the most obvious examples of a personnel action that is integrally related to the military's structure" and accordingly held that the denial of a military promotion and a resulting suspension from civilian employment were integrally military issues that are not reviewable under title VII. *Id.* at 751. It also concluded that investigations are "central to the military's unique concerns regarding discipline and control" and accordingly are not reviewable

under title VII. *Id.* Similarly, the *Gregory* court rejected a technician's attempt to pursue a title VII action because it found that his allegations relating to a military promotion were "integrally related to the military's unique structure."[8] 153 F3d 1074.

These cases all indicate that the judicial inquiry is to determine if bifurcation is possible or if the civilian and military aspects of the employment are so commingled that an unraveling is impossible. The bottom line is that, except with respect to claims implicating integrally military issues, technician work can be separated into its civilian and military elements.

The issue here is Oxley's eligibility for state worker's compensation benefits regarding injuries allegedly incurred in the course of civilian work as a technician. This issue does not affect any issue integrally related to the military's unique structure, nor does plaintiff claim that it does. This is reasonable because the availability of state worker's compensation benefits does not implicate fundamentally military issues such as military discipline, military promotions or the nation's military preparedness. Therefore, the present case is distinct from the cases discussed above in which the claim affected on such fundamentally military issues, making it impossible to separate the technicians' civilian work from their military service. Accordingly, the civilian and military aspects of Oxley's position may be treated separately here for purposes of determining his eligibility for Michigan

---

[8] We note that the *Gregory* court assumed, without deciding, that a technician's retaliation-based hostile work environment claim was justiciable under title VII, which suggests that technicians' civilian status can be separated from their military status with respect to such a claim. However, it concluded that the plaintiff failed to raise a genuine issue of material fact regarding retaliation. 153 F2d 1075.

worker's compensation benefits for injuries arising in the course of civilian technician work.

In the context of a claim for worker's compensation benefits, the next issue is whose service the claimant was in when the alleged injuries arose. Here, this issue is simple because Oxley himself acknowledges that the injuries at issue arose in the course of his civilian technician work.[9] 32 USC 709(d) explicitly states that Oxley is a federal employee in his capacity as a technician.[10] The arguable basis for considering him simultaneously in the service of the state was his military service with the National Guard. However, because his civilian technician status can be separated from his military service with respect to eligibility for state worker's compensation benefits, Oxley's injuries did not arise in the course of employment in the service of the state. Accordingly, he is not a covered employee under § 161(1)(a).

---

[9] We note that in other cases, where it is unclear whose service an employee was in at the time an injury was incurred, Michigan's rule disfavoring double recovery may come into play. See *Stanley v Hinchliffe & Kenner*, 395 Mich 645, 657-659; 238 NW2d 13 (1976). However, the case at bar does not present this issue.

[10] We are aware that *American Federation of Government Employees*, *supra*, concluded that 32 USC 709 made technicians "nominal" federal employees for the limited purpose of fringe and retirement benefits and coverage under the Federal Tort Claims Act. 235 US App DC 105-106. However, the language of 32 USC 709(d) does not so limit a technician's federal employee status. Moreover, worker's compensation benefits may be reasonably categorized as "fringe benefits" because they are "[s]ide, non-wage benefits which accompany or are in addition to a person's employment . . . ." Black's Law Dictionary (6th ed), p 667. Therefore, even under *American Federation of Government Employees* gloss on 32 USC 709(d), technicians are federal employees for purposes of fringe benefits, including worker's compensation benefits.

II

However, before closing the door on Oxley's claim, we must address a final issue raised by the Court of Appeals conclusion that, even in his capacity as a technician, Oxley was employed by the state under the economic reality test. 227 Mich App 534. This test is well set out in the recent case of *Kidder v Miller-Davis Co*, 455 Mich 25, 34; 564 NW2d 872 (1997), where this Court reiterated that it had rejected the control test in favor of the economic reality test to determine who is an employer for purposes of the WDCA. Specifically, the *Kidder* Court held:

> [T]his standard examines a number of criteria including [1] control, [2] payment of wages, [3] hiring, firing, [and] the maintenance of discipline, and [4] common objective. These factors are viewed together in their entirety under a totality of the circumstances test. [*Id.* at 42.]

On the basis of this test, Oxley claims state employee status. He contends that because the adjutant general, an agent of the state, controlled him and had authority to hire, fire, and discipline him, he was an employee of the state. In making this argument, Oxley relies on 32 USC 709(c), which authorizes the state adjutant general to supervise technicians. Overlooked in his analysis, however, is the fact that federal cases establish that in the capacity where they administer technicians, state adjutants general act as federal agents, not state agents.

In *Gilliam v Miller*, 973 F2d 760, 762 (CA 9, 1992), the Ninth Circuit held that an adjutant general's "personnel actions as supervisor over the federal civilian technicians are taken in the capacity of a federal agency," but his actions in supervising the state

National Guard are in the capacity of a state agency. Similarly, in *Leistiko v Stone*, 134 F3d 817, 818 (CA 6, 1998), a wrongful discharge case, the Sixth Circuit stated that the adjutant general acted as "the designee of the Secretary of the Army" in terminating a technician's employment after he was removed from flying status for medical reasons.

Thus, as these authorities persuasively advance, Oxley cannot utilize the status of his supervisor to advance his claim that the economic realities indicate that he was a state employee because his contention that the adjutant general was acting as a state agent in supervising his civilian technician work is untenable. This disposes of factors 1 (control) and 3 (hiring, firing, and discipline authority) of the economic reality test.

The other two factors also militate toward a conclusion that Oxley was a federal employee, not a state employee, in his civilian technician work. Regarding factor 2 (wages), it is undisputed that Oxley received his wages by a federal paycheck and from federal funds. Further, his sick and vacation time and other benefits were provided under the federal civil service system. Finally, with respect to factor 4 (common objective), Oxley's work as a technician was part of the common objective of the federal government to provide for the common defense. See US Const, preamble, art I, § 8. Therefore, these remaining factors of the economic reality test also demonstrate that Oxley was not a state employee in his capacity as a technician.

Accordingly, under both the statutory language and the economic reality test, Oxley, in his capacity as a technician, was not in the service of the state of

Michigan. Therefore, this employment was not covered under § 161(1)(a) and he is not eligible to pursue benefits under Michigan's WDCA for an injury allegedly suffered in the course of his civilian technician work.

CONCLUSION

For these reasons, we conclude that, in his capacity as a civilian technician, Oxley was not a covered employee under § 161(1)(a) of the WDCA. We accordingly reverse the judgment of the Court of Appeals and reinstate the decision of the Worker's Compensation Appellate Commission, which affirmed the magistrate's decision.

WEAVER, C.J., and BRICKLEY, CORRIGAN, and YOUNG, JJ., concurred with TAYLOR, J.

KELLY, J. I respectfully dissent from the majority's analysis of the issues presented in this case. In order to conclude that plaintiff was not a state employee, the majority artificially divides plaintiff's employment into two not necessarily distinct parts: civilian and military. It then concludes that the plaintiff is exclusively a federal employee when working as a civilian and that his injuries arose out of his civilian employment. Consequently, he is not entitled to state worker's compensation benefits.

I do not subscribe to the civilian-military dichotomy. I would hold that, although the National Guard Technician Act of 1968 (the Technician Act) conferred nominal federal employment status upon National Guard technicians, such technicians are also state employees for purposes of the Worker's Disability Compensation Act. Additionally, I would hold that, applying the economic reality test, an employment

relationship existed between the state of Michigan and plaintiff for purposes of the worker's compensation statute. Accordingly, I would affirm the judgment of the Court of Appeals.

The National Guard "occupies a distinct role in the federal structure that does not fit neatly within the scope of either state or national concerns." *Knutson v Wisconsin Air Nat'l Guard*, 995 F2d 765, 767 (CA 7, 1993). It is a hybrid organization that serves, in times of need, both the federal government and the state within which it is located. "[T]he Guard may serve the state in times of civil strife within its borders while also being available for federal service during national emergencies." *Id.*; see also *New Jersey Air Nat'l Guard v Federal Labor Relations Authority*, 677 F2d 276, 279 (CA 3, 1982). "Within each state the National Guard is a state agency, under state authority and control. At the same time, the activity, makeup, and function of the Guard is provided for, to a large extent, by federal law." *Bowen v Oistead*, 125 F3d 800, 802, n 1 (CA 9, 1997).

The Governor and the Governor's appointed adjutant general command the guard in each state. 32 USC 314. The federal Defense Department, the Secretaries of the Army and Air Force, and the National Guard Bureau prescribe regulations and issue orders to organize, discipline, and govern the guard. 32 USC 310. States that fail to comply with federal regulations risk forfeiture of federal funds allocated to organize, equip, and arm state guards. *Id.*, §§ 101, 107, 108, 501; *Knutson*, 995 F2d 767.

Every member of the state Air National Guard is also enlisted in a federal organization known as the Air National Guard of the United States (ANGUS), a

component of the Ready Reserves of the Armed Forces. The latter is activated when the guard is called into federal service. 10 USC 261, 269, 8079, 8261; 32 USC 101, 301; *Perpich v Dep't of Defense*, 496 US 334, 345-346; 110 S Ct 2418; 110 L Ed 2d 312 (1990).

The majority does not explain how or why plaintiff's position as a computer operator was not military-related. It simply assumes that the plaintiff's Michigan National Guard duties on the weekends were military in nature. Whereas, his technician job during the week, when he worked under the control of the state adjutant general, was exclusively civilian, lacking any military qualities or elements. However, in *Leistiko v Stone*,[1] the Sixth Circuit Court of Appeals held that the capacity of National Guard technicians is "irreducibly military in nature." On the basis of the record before us, it is reasonable to conclude that plaintiff's job, as a computer operator in the Air National Guard, primarily served the state of Michigan. See *Knutson, supra*.

Unlike the majority, I find highly persuasive the interpretation of the Technician Act in *American Federation of Government Employees, AFL-CIO, Local 2953 v Federal Labor Relations Authority (AFGE)*, 235 US App DC 104, 113; 730 F2d 1534 (1984). The federal Court of Appeals for the District of Columbia explained the purpose of the Technician Act as follows:

> The principal purpose of enacting the Technician Act was undoubtedly to provide a *retirement and fringe benefit plan for National Guard technicians*. Critics of the old sys-

---

[1] 134 F3d 817, 820-821 (CA 6, 1998).

tem complained that the failure of the prior law to provide
a comprehensive retirement package acted as a drag on the
Guard's efforts to recruit and retain a first-rate cadre of
technicians. By providing nominal federal employment sta-
tus to the technicians, the Act sought to cement their alle-
giance to their Guard careers. [*Id.* at 113.]

The court held that the Technician Act made tech-
nicians "nominal federal employees." *Id.* at 109. Con-
gress added the federal employment status for the
limited purpose of allowing such members to pursue
retirement benefits and coverage under the Federal
Tort Claims Act, 28 USC 1346, 2671-2680. The impli-
cation, of course, is that such employees were, and
still are, primarily employees of their respective
states.

"The employment, discipline and discharge of tech-
nicians remains completely with the state officials,
and their day to day activities on the job are con-
trolled at the state level." *AFGE, supra* at 108.
Accordingly, I would hold that plaintiff always held
the position as a state employee, as well as a nominal
federal employee.

Likewise, applying the economic reality test, I con-
clude that plaintiff was primarily employed by the
state. The majority correctly recites the appropriate
test from *Kidder v Miller-Davis Co*,[2] but erroneously
concludes that plaintiff was exclusively a federal
employee during the weekdays as a technician.

The *Kidder* Court held:

[The economic reality test] examines a number of criteria
including [1] control, [2] payment of wages, [3] hiring, fir-
ing, [and] the maintenance of discipline, and [4] common

---

[2] 455 Mich 25, 34; 564 NW2d 872 (1997).

objective. These factors are viewed together in their
entirety under a totality of the circumstances test. [*Id.* at
42.]

The majority states that, because the state adjutant
general acted as an agent of the federal government,
the first factor compels a finding that plaintiff was a
federal employee. In other words, the plaintiff was
under the control of a federal agent. I disagree with
the majority's conclusion that the state adjutant gen-
eral acted as a federal agent.

The majority cites *Gilliam v Miller*[3] and *Leistiko v
Stone*[4] to support its assertion that the state adjutant
general is an agent of the federal government. I find
the majority's reliance on both cases misplaced,
because both are distinguishable from the case at
issue. In *Gilliam*, the Ninth Circuit Court of Appeals
simply stated that the Oregon Adjutant General acts
as a federal agency for the limited purpose of deter-
mining whether the federal Administrative Proce-
dures Act applies. The Ninth Circuit Court was not
presented with the question before us, whether a
National Guard technician is a federal or a state
employee. Moreover, in *Leistiko*, there was no discus-
sion about whether a state official acts as a federal
agent.

I find compelling the fact that the Michigan Legisla-
ture created the office of the adjutant general. MCL
32.700; MSA 4.678(300). In fact, it vested our Gover-
nor with the authority to appoint the adjutant gen-
eral.[5] One of the adjutant general's duties is to act as

---

[3] 973 F2d 760, 762 (CA 9, 1992).

[4] *Supra* at 818.

[5] MCL 32.702; MSA 4.678(302).

"liaison in the transaction of official business for the state . . . ."[6] Therefore, the Legislature intended the state adjutant general to be a state agent, not a federal agent.

The state adjutant general has the authority to employ, command, and control the day-to-day activities of the technicians. Accordingly, plaintiff was in the control of the state. Likewise, the same analysis would apply to factor three of the test, because the state adjutant general is vested with the authority to hire, fire, and maintain discipline over plaintiff.

As to factor two, wages, it is undisputed that plaintiff received his wages from federal funds. However, in *Tulppo v Ontonagon Co*,[7] the Court of Appeals stated that federal funding is not dispositive as a factor to determine whether an employee is a state or federal employee. Thus, the fact that plaintiff was paid from federal funds does not carry great weight.

Finally, as to factor four, common objective, the majority holds that plaintiff's work as a technician was part of the common objective of the federal government. However, the majority conveniently ignores the fact that a person enlisting in the National Guard takes an oath to defend not only the United States, but also the Constitution of the state of Michigan. MCL 32.625; MSA 4.678(225). This provides further support that plaintiff was both a state and a federal employee.

Factors one, three, and four favor a finding that plaintiff was employed by the state of Michigan. Therefore, I would conclude that plaintiff's employ-

---

[6] MCL 32.710; MSA 4.678(310).

[7] 207 Mich App 277, 284; 523 NW2d 883 (1994).

ment was covered under § 161(1)(a). Accordingly, I would affirm the judgment of the Court of Appeals.

CAVANAGH, J., concurred with KELLY, J.