DIBENEDETTO v SECOND INJURY FUND

Docket No. 200754. Submitted March 11, 1998, at Lansing. Decided April 10, 1998, at 9:10 A.M. Leave to appeal sought.

Margaret DiBenedetto sustained an injury related to work as a licensed practical nurse in 1986. In 1990, she began receiving worker's compensation weekly benefits for continuing disability set at fifty percent of the state average weekly wage for 1986. This benefit rate was based on § 356(1) of the Worker's Disability Compensation Act, MCL 418.356(1); MSA 17.237(356)(1), which allows an employee who has experienced two years of continuing disability to seek an adjustment of the weekly benefit rate to as much as fifty percent of the state average weekly wage for the year of injury upon proof that the employee's earnings, had the employee not been disabled, would have risen by virtue of age, education, training, experience, or other factors. Under the act, the Second Injury Fund pays the added benefit amount. DiBenedetto then resumed work, but as a phlebotomist, not as a licensed practical nurse. In 1993, the Second Injury Fund petitioned the worker's compensation bureau for the termination of benefits. A worker's compensation magistrate denied the petition. The Worker's Compensation Appellate Commission ordered termination on the basis of § 301(5)(c), MCL 418.301(5)(c); MSA 17.237(301)(5)(c), which provides that if an employee is employed and the average weekly wage of the employee is equal to or more than the average weekly wage the employee received before the date of injury, the employee is not entitled to wage-loss benefits for the duration of such employment. DiBenedetto appealed to the Court of Appeals by leave granted.

The Court of Appeals held:

1. When an employee successfully obtains an adjustment in benefits pursuant to § 356(1), the imputed higher wage should be substituted for the preinjury wage when applying § 301(5). An injured employee will thereby receive the benefit of § 356(1) while unemployed, will receive no benefits if wages from favored work exceed the augmented wage rate, and will receive eighty percent of the difference up to the statutory maximum if the favored work pays less than the augmented wage rate. In this case, the magistrate found that, but for her injury, DiBenedetto would have had an average weekly wage of $365.68. Because her weekly wages as a phleboto-

mist have fluctuated, she is entitled to eighty percent of the difference whenever her weekly wage falls below $365.68 pursuant to § 301(5)(b), and to no benefits when her weekly wage exceeds that amount.

2. The appellate commission properly concluded that DiBenedetto remains totally disabled. At the time of her injury, the worker's compensation act defined "disability" in a manner consistent with longstanding judicial decisions distinguishing between skilled and unskilled employment. DiBenedetto is totally disabled because she is no longer able to do the skilled work of a licensed practical nurse.

Reversed and remanded.

WORKER'S COMPENSATION — WEEKLY WAGE-LOSS BENEFITS — ADJUSTMENTS.

When an employee obtains an adjustment in worker's compensation benefits pursuant to § 356(1) of the Worker's Disability Compensation Act, by demonstrating that the employee would have realized an increase in earnings were it not for the disabling injury, the imputed higher wage should be substituted for the preinjury wage when applying § 301(5) of the act to determine the employee's eligibility for weekly wage-loss benefits (MCL 418.301[5], 418.356[1]; MSA 17.237[301][5], 17.237[356][1]).

*Libner, Van Leuven, Evans & Portenga, P.C.* (by *John A. Braden*), for the plaintiff.

*Frank J. Kelley*, Attorney General, *Thomas L. Casey*, Solicitor General, and *Rose A. Houk*, Assistant Attorney General, for the Second Injury Fund.

Before: FITZGERALD, P.J., and HOOD and SAWYER, JJ.

PER CURIAM. Plaintiff appeals by leave granted a January 3, 1997, order of the Worker's Compensation Appellate Commission (WCAC), which reversed the decision of the magistrate and granted the petition to stop payment of benefits by defendant Second Injury Fund (SIF). We reverse and remand.

I

The facts are undisputed. Plaintiff worked part-time for defendant Westshore Hospital as a licensed practical nurse (LPN). She injured her back on August 26, 1986, while lifting a patient. Her average weekly wage at the time was $141.61. After being off work for some time, she filed an application for hearing in May 1989 claiming continuing disability. She also claimed that her benefit rate should be determined pursuant to § 356 of the Worker's Disability Compensation Act, MCL 418.356; MSA 17.237(356), which provides in part:

(1) An injured employee who, at the time of the personal injury, is entitled to a rate of compensation less than 50% of the then-applicable state average weekly wage as determined for the year in which the injury occurred pursuant to section 355, may be entitled to an increase in benefits after 2 years of continuous disability. After 2 years of continuous disability, the employee may petition for a hearing at which the employee may present evidence, that by virtue of the employee's age, education, training, experience, or other documented evidence which would fairly reflect the employee's earning capacity, the employee's earnings would have been expected to increase. Upon presentation of this evidence, a hearing referee or worker's compensation magistrate, may order an adjustment of the compensation rate up to 50% of the state average weekly wage for the year in which the employee's injury occurred. The adjustment of compensation, if ordered, shall be effective as of the date of the employee's petition for the hearing. The adjustments provided in this subsection shall be paid by the carrier on a weekly basis. However, the carrier and the self-insurers' security fund shall be entitled to reimbursement for these payments from the second injury fund created in section 501. There shall be only 1 adjustment made for an employee under this subsection.

In a decision mailed June 13, 1990, a magistrate found that plaintiff was totally disabled as a result of work-related injuries and thus entitled to benefits. The magistrate also found that, but for her injury, her average weekly wage at the time that she filed her petition would have been $365.38. Applying § 356(1), the magistrate awarded benefits at the rate of fifty percent of the state average wage for 1986, $207.35. If benefits had been awarded based on plaintiff's average weekly wage, the rate would have been $101.99 a week. Pursuant to the statute, the SIF is liable for the additional weekly benefits. The SIF appealed, and in an opinion and order dated February 10, 1993, the WCAC affirmed. The SIF did not apply to this Court for leave to appeal.

Meanwhile, in June 1990 plaintiff returned to work at the hospital. Although she is not able to do the work of an LPN, she can work as a phlebotomist. She worked part-time until the end of 1990 or the beginning of 1991, when she began to work full-time. Plaintiff's weekly wage fluctuates between $250 and $370.

In March 1993, the SIF filed a petition to stop payment of benefits. The SIF argued that plaintiff is no longer disabled. In the alternative, the SIF argued that she is no longer entitled to benefits pursuant to § 301(5)(c) of the act, which provides:

> If an employee is employed and the average weekly wage of the employee is equal to or more than the average weekly wage the employee received before the date of injury, the employee is not entitled to any wage-loss benefits under this act for the duration of such employment.

The SIF argued that, because plaintiff earns at least $250 a week, which is more than the average weekly

wage of $141.61 that she earned before her injury, she is not entitled to benefits while so employed.

In an opinion and order mailed July 11, 1994, the magistrate denied the petition to stop benefits. The magistrate found that plaintiff remained totally disabled from her former occupation as an LPN and that the previous magistrate's decision is res judicata on this point. The magistrate also found that plaintiff is entitled to supplemental benefits from the SIF for each week in which her weekly wage exceeds the revised or stepped-up average weekly wage as found by the previous magistrate, $365.38. The magistrate did not address the SIF's argument based on § 301(5)(c).

The SIF appealed, and in an opinion and order dated January 3, 1997, the WCAC reversed in part. Although the WCAC agreed with the SIF that the magistrate erred in relying on res judicata, the WCAC found that plaintiff remains totally disabled within the meaning of the act as it existed at the time she was injured, because she can no longer perform the duties of her skilled employment, even though she can earn substantial wages in other employment. However, the WCAC agreed with the SIF that § 301(5)(c) is clear and unambiguous on its face. Because plaintiff's present average weekly wage exceeds the average weekly wage she received before the date of her injury, she is not entitled to any wage-loss benefits.

This Court granted plaintiff's application for leave to appeal.

II

The interpretation of a statute is a question of law, and pursuant to § 861a(3) of the worker's compensation act, MCL 418.861a(3); MSA 17.237(861a)(3), this

Court reviews de novo questions of law involved with any final order of the WCAC.

The SIF argues that the WCAC simply applied § 301(5)(c) as written and that there is no need for interpretation of the statute or inquiry into legislative intent. While we agree that the Legislature's intent is to be found in the terms and arrangement of the statute, and that words should be taken in their natural and ordinary sense, interpretation of a statute also requires consideration of the purpose of the statute and the object sought to be accomplished. Statutes must be construed to avoid absurd or illogical results and to give effect to their purposes. *Gross v General Motors Corp*, 448 Mich 147, 158-159, 160, 164; 528 NW2d 707 (1995).

We agree with plaintiff that the Legislature *cannot* have intended § 301(5)(c) to be applied as it has been in this case in light of the legislative decision embodied in § 356(1). That section allows a disabled employee under certain circumstances to prove that, but for her injury and disability, she would be earning a greater wage than she was earning at the time of the injury. Presumably this section is meant to alleviate the inequities that may result when an employee is injured at a job paying much less than the employee would be able to command in the marketplace or would soon be able to command because of education, training, and so forth. A person might work part-time, like plaintiff, for a variety of reasons, but might have expected to work full-time and received much greater compensation in the near future. If the WCAC's interpretation of § 301(5)(c) were correct, then the purpose underlying § 356(1) would be defeated. Even if plaintiff earns only $142 a week,

she would lose all benefits because her present weekly wage would exceed the weekly wage she earned at the time of her injury by thirty-nine cents. Moreover, if plaintiff were to refuse the offer of a job paying $142 a week, she would forfeit her right to benefits pursuant to § 301(5)(a).

In order to avoid this illogical result and to give effect to both sections, we hold that, when an employee successfully obtains an adjustment in compensation pursuant to § 356(1), by demonstrating that the employee would have earned a greater wage but for the injury, the imputed higher wage should be substituted for the preinjury wage when applying § 301(5). An injured employee will thereby receive the benefit of § 356(1) while unemployed, will receive no benefits if wages from favored work exceed the augmented wage rate, and will receive eighty percent of the difference up to the statutory maximum if the favored work pays less than the augmented wage rate.

In the instant case the magistrate found that, but for her injury, plaintiff would have an average weekly wage of $365.38. Plaintiff's weekly wages as a phlebotomist have fluctuated between $250 and $370. Plaintiff is therefore entitled to eighty percent of the difference whenever her weekly wage falls below $365.38 pursuant to § 301(5)(b), and to no benefits when her weekly wage exceeds that amount. We reverse and remand for entry of an order consistent with this opinion.

Finally, the SIF argues in the alternative that the WCAC erred in holding that plaintiff remains totally disabled. We disagree. At the time of plaintiff's injury in 1986 the statute defined "disability" in a manner con-

sistent with longstanding judicial decisions distinguishing between skilled and unskilled employment. *Murdock v Michigan Health Maintenance Organization*, 151 Mich App 578, 583; 391 NW2d 757 (1986). See also *Haske v Transport Leasing, Inc*, 455 Mich 628, 648; 566 NW2d 896 (1997). Because plaintiff is no longer able to do the skilled work of an LPN as a result of her work-related injury, the WCAC properly concluded that she is totally disabled under the law in effect at the time of her injury.

Reversed and remanded.