# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* J. R. N. LINNER, Minor.

UNPUBLISHED
July 7, 2016

Nos. 330241; 330243
Cass Circuit Court
Family Division
LC No. 15-000081-NA

Before: MARKEY, P.J., and OWENS and BOONSTRA, JJ.

PER CURIAM.

In docket no. 330241, respondent-mother appeals by right the October 16, 2015 order terminating her parental rights to the minor child JRNL under MCL 712A.19b(3)(i) (prior termination of parental rights due to serious and chronic neglect; prior attempts at parental rehabilitation unsuccessful) and (*l*) (parent's rights to another child terminated under section (2)(b)). In docket no. 330243, respondent-father appeals by right the October 16, 2015 order terminating his parental rights to JRNL under MCL 712A.19b(3)(i) and (*l*). We affirm.

Mother's rights to two minor children, KB and MV, were involuntarily terminated on January 31, 2002.[1] On January 10, 2005, mother and father's parental rights to the minor child SL were terminated. JRNL was born on November 11, 2005. When JRNL was an infant, mother and father left her in the custody of mother's maternal cousin Laura Stineback and her husband, Terry Stineback. Mother and father never saw JRNL after they left her with the Stinebacks. They never attempted to retrieve her, and they did not contribute to her support. Initially, every six months, mother signed a power of attorney to allow the Stinebacks to care for JRNL, but she eventually stopped doing so. In January 9, 2012, the Stinebacks were appointed guardians of JRNL. On May 12, 2015, Terry shot and killed Laura while JRNL was in the home. JRNL was placed in the custody of the Department of Health and Human Services (DHHS)[2] the next day, and the trial court took jurisdiction over her on June 29, 2015. Mother's and father's rights to JRNL were terminated on October 16, 2015.

---

[1] The father of KB and MV voluntarily released his rights to them.

[2] The Department of Human Services initiated this case, but it has since been merged into the newly created DHHS. We therefore refer to the newly formed Department in this opinion.

Mother and father argue that the trial court erred in considering certain documents when finding that termination was proper under MCL 712A.19b(3)(i). Specifically, mother argues that the trial court erred in considering a parenting assessment performed on her in 2001 in connection with the proceedings regarding KB and MV because the assessment was not entered into evidence, and she did not receive notice that the trial court would use it. Father argues that the trial court erred in considering a report of a psychological evaluation performed on him in 2004 in connection with the proceedings regarding SL because he was not provided with a copy of the evaluation or an opportunity to cross-examine the individual who created the report. MCR 3.977(H)(2) states that at a hearing on a supplemental petition for termination of parental rights,

> all relevant and material evidence, including oral and written reports, may be received by the court and may be relied upon to the extent of its probative value. The parties must be afforded an opportunity to examine and controvert written reports received by the court and shall be allowed to cross-examine individuals who made the reports when those individuals are reasonably available.

And, when deciding whether to terminate parental rights, a trial court is permitted to consider all of the evidence in the record. *In re LaFlure*, 48 Mich App 377, 391; 48 NW2d 482 (1973).

The 2001 assessment was relevant to show that "prior attempts to rehabilitate" mother were unsuccessful pursuant to MCL 712A.19b(3)(i). Specifically, the assessment stated that mother was hostile to services; she took no responsibility for her own behavior, and she did not acknowledge her need to change. The assessment concluded that it was "extremely unlikely that she will be able to overcome these barriers . . . ." Contrary to mother's argument, she was "afforded an opportunity to examine and controvert" the document. MCR 3.977(H)(2). The assessment was contained in a package of documents submitted to the trial court as evidence. The cover letter to this package is dated July 17, 2015, and the trial court stamped the letter on July 20, 2015, indicating that the trial court received the package of documents on that date. The cover letter states that a copy of the package of documents, which included the 2001 assessment, was sent to mother's counsel. So, mother was provided with a copy of the assessment, and she had an "opportunity to examine and controvert" it. MCR 3.977(H)(2). Mother has provided absolutely no evidence to the contrary. Furthermore, the author of the assessment testified at the termination hearing, and mother's counsel cross-examined him. Therefore, the trial court did not clearly err in citing the 2001 assessment in finding that termination of mother's parental rights was proper under MCL 712A.19b(3)(i). *In re VanDalen*, 293 Mich App 120, 139; 809 NW2d 412 (2011) (trial court's determination that a statutory ground for termination of parental rights exists is reviewed for clear error).

Similarly, the 2004 psychological evaluation of father was relevant because it supported the trial court's finding that prior attempts to rehabilitate father were unsuccessful, which was a requirement for termination under MCL 712A.19b(3)(i). The evaluation stated that father lacked parenting knowledge, that father should not be SL's caregiver, and that treatment for father would not be beneficial. Father argues that he was not provided with a copy of this report, but evidence shows that he was. The evaluation report was submitted to the trial court as part of a package of documents submitted as exhibits. The cover letter to this package is dated October 9, 2015. The trial court stamped this cover letter as having received it on October 12, 2015. The cover letter states that a copy of the package of documents was sent to father's counsel.

Furthermore, the evaluation was submitted to the trial court at the beginning of the termination hearing. Therefore, father was "was afforded an opportunity to examine and controvert" the 2004 evaluation. MCR 3.977(H)(2). Father argues that he did not have the opportunity to cross-examine the author of the report. But, there is no indication that father subpoenaed the author to appear at the termination hearing. The trial court did not clearly err in finding that termination of father's rights was proper under MCL 712A.19b(3)(i). *In re VanDalen*, 293 Mich App at 139.

Mother and father also argue error, claiming that reasonable efforts at reunification were not made. "When a child is removed from a parent's custody, the agency charged with the care of the child is [usually] required to report to the trial court the efforts made to rectify the conditions that led to the removal of the child." *In re Plump*, 294 Mich App 270, 272; 817 NW2d 119 (2011). Reasonable efforts at reunification are not required, however, where "[t]he parent has had rights to the child's siblings involuntarily terminated." MCL 712A.19a(2)(c). As discussed above, mother and father's rights to JRNL's siblings were involuntarily terminated. Therefore, reasonable efforts at reunification were not required with regard to either mother or father. *Id.*

Mother and father also argue that the trial court violated MCL 712A.19a(2) when it failed to explicitly make a finding that reasonable efforts were not required. First, the plain and ordinary meaning of MCL 712A.19a(2) did not require the trial court to make an explicit finding that reasonable efforts were not required. That provision requires a trial court to conduct a permanency planning hearing within 30 days *after* determining that reasonable efforts are unnecessary. See *DiBenedetto v West Shore Hosp*, 461 Mich 394, 402; 605 NW2d 300 (2000) (The words of a statute must be given their plain and ordinary meaning). Furthermore, at the termination hearing the trial court correctly stated that under the law, services were not required in this case and that further efforts at reunification would have given "false hope" to mother and father. As discussed above, MCL 712A.19a(2)(c) explicitly states that reasonable efforts at reunification are not required where "[t]he parent has had rights to the child's siblings involuntarily terminated." Because mother and father's rights to JRNL's siblings were involuntarily terminated, reasonable efforts in respect to this child were not required. Consequently, the trial court did not err by refusing to order further reasonable efforts at reunification. MCL 712A.19a(2)(c).

Father argues that because the trial court ordered reasonable efforts at the June 29, 2015 adjudication and at the July 24, 2015 disposition, he was entitled to services. He abandons this argument by citing no legal authority to support it. *Prince v MacDonald*, 237 Mich App 186, 197; 602 NW2d 834 (1999). Mother and father have not established plain error with regard to reasonable efforts. *Rivette v Rose-Molina*, 278 Mich App 327, 328-329; 750 NW2d 603 (2008).

Finally, father argues on appeal in docket no. 330243 that termination was not in JRNL's best interests. "Once a statutory ground for termination has been proven, the trial court must find that termination is in the child's best interests before it can terminate parental rights." *In re Olive/Metts*, 297 Mich App 35, 40; 823 NW2d 144 (2012) (citations omitted). This Court reviews the trial court's determination of best interests for clear error. *Id.*; *In re VanDalen*, 293 Mich App at 139, 141. When considering best interests, the focus is on the child rather than the parent. *In re Moss*, 301 Mich App 76, 87; 836 NW2d 182 (2013). The trial court may consider such factors as "the child's bond to the parent, the parent's parenting ability, the child's need for

permanency, stability, and finality, and the advantages of a foster home over the parent's home[.]" *In re Olive/Metts*, 297 Mich App at 41-42 (citations omitted).

The trial court did not clearly err in finding that termination of father's rights was in JRNL's best interests. *Id* at 40. Father, along with mother, left her with the Stinebacks when she was an infant. Father never attempted to see her again, and he did not support her. JRNL did not know father, and there was no bond between them. Furthermore, evidence shows that JRNL suffered severe trauma. She required a committed caregiver who understood her needs. Psychological evaluations performed on father over time show that he was unable to provide JRNL the degree of care she needed. Moreover, father's neglect of JRNL and his child SL clearly shows his inability to provide permanency and stability. See *Id* at 42.

We affirm.

/s/ Jane E. Markey
/s/ Donald S. Owens
/s/ Mark T. Boonstra

-4-