*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

MATTHEW D. WARREN,

Plaintiff-Appellant,

v

A. D. TRANSPORT EXPRESS, INC.,

Defendant-Appellee.

UNPUBLISHED
February 25, 2020

No. 345005
MCAC
LC No. 16-000011

Before: BORRELLO, P.J., and METER and RIORDAN, JJ.

PER CURIAM.

Plaintiff appeals by leave granted the order of the Michigan Compensation Appellate Commission (MCAC) reversing the order of the magistrate. *Warren v AD Transport Express, Inc*, unpublished order of the Court of Appeals, entered January 11, 2019 (Docket No. 345005). The magistrate issued an order awarding plaintiff worker's compensation benefits. Defendant appealed the magistrate's decision to the MCAC, which reversed the magistrate's order awarding benefits. For the reasons set forth in this opinion, we vacate the MCAC's order and remand to the MCAC for further proceedings consistent with this opinion.

## I. BACKGROUND

The background facts in this case are mostly undisputed and come from the magistrate's opinion. In his opinion the magistrate wrote that plaintiff testified that he has a history of injuries that occurred before two incidents in 2013 that are the basis of his claim for workers' compensation benefits. When he was 16 years old, he broke "one thoracic and one lumbar vertebrae wrestling with a friend." He was treated and recovered. He later joined the Army, passing a physical before doing so. Plaintiff testified that in 1997, he was injured in a car accident. In that accident, he broke his neck and suffered a closed head injury.

Plaintiff began working for defendant in January 2011. On January 30, 2013, plaintiff allegedly injured himself at work. While pulling a tandem pin, plaintiff felt "a sharp pain in [his] low back and across [his] back and up into [his] shoulders." Plaintiff went to a clinic recommended by defendant and received pills. Plaintiff did not take any time off work or receive any work restrictions. Plaintiff experienced pain and stiffness in his neck, which radiated down into his left

arm. He also experienced pain in his lower back which radiated down his right leg and affected "[his] butt and [his] hips." On April 6, 2013, plaintiff allegedly sustained another injury at work. Plaintiff was sitting at a traffic light when he was rear-ended. Plaintiff did not experience pain at first, but woke up "in extreme pain" and went to the emergency room. X-rays did not show any injuries to plaintiff's neck. Plaintiff's doctor took him off work on April 17, 2013, "[d]ue to lower back pain and the sciatic pain in [his] leg and [his] foot."

Plaintiff treated with Dr. Craig Peppler who testified that after his various examinations of plaintiff, he believed that plaintiff suffered injuries to his spine: "In this case, I felt that everything was concordant. The MRI revealed disc protrusion at the L5/S1. The EMG indicated evidence of an S1 radiculopathy. The physical exam showed ankle reflex changes that would be expected with this type of finding. So I believe they all fit together to equal the diagnosis of lumbar radiculopathy or S1 radiculopathy[.]" Dr. Peppler believed that plaintiff's injuries were caused by the two work-related accidents in 2013.

Defendant's expert, Dr. Maynard Buszek, initially evaluated plaintiff on August 26, 2013. A report from that visit explains that plaintiff broke his neck in 1995 in a car accident. In 1982 or 1983, plaintiff suffered a "compression fracture of the lumbar spine from a fight." Before 2013, he had "back pain and muscle pain for years, dating back to the prior injuries as stated above." Dr. Buszek reviewed an MRI report dated March 15, 2013, and compared it to an MRI report dated March 14, 2008. In sum, Dr. Buszek concluded that the MRI results showed degenerative changes, not any evidence of an injury in 2013, concluding that there was: "no manifestation of pathology that would relate to the motor vehicle/work event of April 16, 2013." Ultimately, Dr. Buszek believed that plaintiff was not injured in 2013. Rather, his symptoms were consistent with degenerative changes. To the extent there was any alteration to plaintiff's ankle reflex, Dr. Buszek opined that this was likely related to plaintiff's past injuries, although he did not explain how or why he reached this conclusion.

Following review of this testimony, the magistrate found that plaintiff:

has sustained his burden of proving a personal injury to his neck, back and shoulder arising out of and in the course of his employment with the [d]efendant on January 30, 2013 and April 6, 2013. . . . Plaintiff has sustained his burden of proving a work-related disability from April 18, 2013 through July 9, 2015.

Plaintiff credibly testified that he was injured on January 30, 2013 while trying to pull the tandem pin on a trailer. Plaintiff credibly testified that he felt a sharp pain in his low back and across his back and up into his shoulder. Plaintiff credibly testified that he reported the injury and went to the company clinic for treatment.

Plaintiff credibly testified that he had another injury at work on April 6, 2013 when he was sitting at a stop light and was rear-ended. Plaintiff credibly testified that he woke up that night in extreme pain and he went to the emergency room.

Plaintiff's credible testimony is supported by the credible testimony of Dr. Peppler. Dr. Peppler treated [p]laintiff for his injuries and credibly testified that his diagnosis was causally related to [p]laintiff's work injuries.

Plaintiff has sustained his burden of proving a work-related disability from April 18, 2013 through July 9, 2015 on which date Dr. Buszek examined [p]laintiff and credibly testified that there was no manifestation of a foundation for limitations, restrictions or a disability from activities.

Following issuance of the magistrate's opinion, defendant appealed to the MCAC. Defendant stated that the sole issue on appeal as: "Was there a change in pathology after the incidents at work?" Defendant argued that the magistrate failed to apply the holding of *Rakestraw v Gen Dynamics Land Sys*, 469 Mich 220; 666 NW2d 199 (2003), which was later codified in the second sentence of MCL 418.301(1), which states, "A personal injury under this act is compensable if work causes, contributes to, or aggravates pathology in a manner so as to create a pathology that is medically distinguishable from any pathology that existed prior to the injury." Defendant further argued that this failure was an error of law that the MCAC could correct under a de novo standard of review.

The MCAC concurred with defendant and reversed the magistrate. In its statement of the facts, the MCAC explained that the magistrate relied on Dr. Peppler's testimony, which the MCAC commission found incomplete because Dr. Peppler did not have a complete medical history, including all of plaintiff's past injuries, "thus leading to the erroneous avoidance of an analysis under *Rakestraw* infra. Thus, we review under a de novo standard."

Following its review of the record, the MCAC found that Dr. Peppler was given an incomplete medical history and that his theory of causality was made without regard for or comparison to the objective MRI findings from 2008. In sum, other than subjective complaints of pain, the MCAC concluded that there was no evidence of any objective manifestation of new injury to the plaintiff's neck and shoulder. Accordingly, the MCAC reversed the magistrate in a unanimous decision. This appeal then ensued.

## II. ANALYSIS

The Michigan Legislature has created two standards of review in worker's compensation cases, one that applies to the MCAC's review of the magistrate's decision and one that applies to this Court's review of the MCAC's decision. *Mudel v Great Atlantic & Pacific Tea Co*, 462 Mich 691, 730; 614 NW2d 607 (2000).

The "substantial evidence" standard governs the WCAC's[1] review of the magistrate's findings of fact, while the "any evidence" standard governs the judiciary's review of the WCAC's findings of fact. The WCAC enjoys statutory authority to make independent findings of fact, regarding issues that have been addressed or overlooked by the magistrate, as long as the record is sufficient for

---

[1] The Workers Compensation Appellate Commission (WCAC) is the predecessor to the MCAC.

administrative review and does not prevent the WCAC from reasonably exercising its reviewing function without resort to speculation. The role of the WCAC is to ensure that the factual findings in worker's compensation cases are supported by the requisite evidence. The role of the judiciary is to ensure that the WCAC properly recognized and exercised its administrative appellate role. [*Id*. at 730.]

In sum, "the judicial standard of review is extremely deferential[.]" *Id*. at 703.

> [T]he judiciary must ensure that the WCAC did not misapprehend its administrative appellate role in reviewing decisions of the magistrate. As long as there exists in the record any evidence supporting the WCAC's decision, and as long as the WCAC did not misapprehend its administrative appellate role (e.g., engage in de novo review; apply the wrong rule of law), then the judiciary must treat the WCAC's factual decisions as conclusive. [*Id*. at 703-704. (footnote omitted).]

This Court reviews questions of law de novo. *DiBenedetto v West Shores Hosp*, 461 Mich 394, 401; 605 NW2d 300 (2000). The standard for the MCAC's review of a magistrate's findings of facts is found in MCL 418.861a(3), which provides:

> Beginning October 1, 1986 findings of act made by a worker's compensation magistrate shall be considered conclusive by the commission if supported by competent, material, and substantial evidence on the whole record. As used in this subsection, "substantial evidence" means such evidence, considering the whole record, as a reasonable mind will accept as adequate to justify the conclusion.

The "whole record" is "the entire record of the hearing including all of the evidence in favor and all the evidence against a certain determination." MCL 418.861a(4). "The commission or a panel of the commission shall review only those specific findings of fact or conclusions of law that the parties have requested to be reviewed." MCL 418.861a(11). The MCAC's review "shall include both a qualitative and quantitative analysis of th[e] evidence in order to ensure a full, thorough, and fair review." MCL 418.861a(13).

The "crucial difference between the administrative and judicial standards of review" is that "the role of the [commission] is to ensure that factual findings are supported by the requisite evidence, while the role of the judiciary is to ensure the integrity of the administrative process." *Mudel*, 462 Mich at 701. Thus, the judicial standard of review is "extremely deferential[.]" *Id*. at 703.

> If it appears on judicial appellate review that the [commission] carefully examined the record, was duly cognizant of the deference to be given to the decision of the magistrate, did not 'misapprehend or grossly misapply' the substantial evidence standard, and gave an adequate reason grounded in the record for reversing the magistrate, the judicial tendency should be to deny leave to appeal or, if it is granted, to affirm, in recognition that the Legislature provided for administrative appellate review by the seven-member [commission] of decisions of thirty magistrates, and bestowed on the [commission] final fact-finding responsibility subject to constitutionally limited judicial review. [*Id*. at 703 (quotation omitted).]

This Court must adjudicate whether the MCAC misapprehended its administrative appellate role by engaging in de novo review of the magistrate's factual findings or applying the wrong rule of law. *Mudel*, 462 Mich at 703-704. Our review leads us to conclude that the MCAC did both. The MCAC's decision appropriately cited the "substantial evidence" standard, and explained that the commission was to accord due deference to the magistrate's credibility determinations. But after briefly summarizing the facts of the case, the MCAC held:

> However, it is plaintiff's prior history of incidents and analysis of the objective evidence, namely, the MRI results, that are of import to defendant's issues on appeal. Specifically, the plaintiff testified that when he was 16 years old, he was wrestling with a friend and fractured a vertebra in his lower back. Then, in 1997, he was in a significant car accident in which he broke his neck and received a closed head injury. He testified that he was out of work following that incident for a year and a half to two years.

> This appeal hinges upon the testimony of two doctors, Dr. Craig Peppler and Dr. Maynard Buszek and how the magistrate applied the law to their testimony.

> Our review of the record demonstrates that the magistrate relied on the testimony of Dr. Peppler who was possessed of an incomplete medical history of the plaintiff thus leading to the erroneous avoidance of an analysis under *Rakestraw infra*. Thus, we review under a de novo standard.

Thus, the MCAC appears to have concluded that the magistrate erred by relying on Dr. Peppler's testimony because Dr. Peppler was unaware of plaintiff's entire prior history of injuries. The MCAC then concluded this reliance caused the magistrate to avoid analyzing the case under *Rakestraw*, and that this omission then allowed the MCAC to disregard the magistrate's factual findings and apply a de novo standard of review. This was error by the MCAC because this case was not a *Rakestraw* matter.

In *Rakestraw*, the facts were simple and uncontested: "At the time [E. Wayne Rakestraw] began working for defendant in 1996, he had a preexisting neck condition that was asymptomatic. According to [Rakestraw], his work for defendant caused his neck pain to return and increase." *Rakestraw*, 469 Mich at 222 (footnote omitted). Specifically, Rakestraw "suffered from a herniated cervical disk that required surgeries in December 1991 and April 1992." *Id*. at 222 n 2. A magistrate awarded benefits "for the aggravation of his symptoms." *Id*. at 223. The magistrate explicitly found that Rakestraw's postsurgical changes to his spine were *not* aggravated by his employment, and that the proof presented would not establish any change of pathology related to a workplace injury or activity. *Id*. at 223. Regardless, the magistrate awarded benefits based on a finding that Rakestraw's "employment aggravated the *symptoms* of the preexisting neck condition." *Id*.

Our Supreme Court began by explaining that "an employee must establish that he has suffered 'a personal injury arising out of and in the course of employment' in order to be eligible for compensation benefits." *Id*. at 225, citing MCL 418.301(1). The Court explained that "symptoms such as pain, standing alone, do not establish a personal injury under the statute. Rather, a claimant must also establish that the symptom complained of is causally linked to an

injury that arises 'out of and in the course of employment' in order to be compensable." *Id*. After discussing several prior cases, the Court explained that "where an employee claims to have suffered an injury whose symptoms are consistent with a preexisting condition, the claimant must establish the existence of a work-related injury that extends beyond the manifestation of symptoms of the underlying preexisting condition." *Id*. at 228 (quotation marks and citation omitted). The Court rejected opinions of this Court that seemed to hold that "the aggravation of symptoms of a preexisting condition is compensable without finding a work-related injury . . . ." *Id*. at 230. Summarizing its decision, the Court wrote:

> We reaffirm today that an employee must establish the existence of a work-related injury by a preponderance of the evidence in order to establish entitlement to benefits under § 301(1). A symptom such as pain is evidence of injury, but does not, standing alone, conclusively establish the statutorily required causal connection to the workplace. In other words, evidence of a symptom is insufficient to establish a personal injury "arising out of and in the course of employment."
>
> The text of the statute does not specifically demand that a claimant prove that his injury is "medically distinguishable" from a preexisting condition. However, the clear language of the statute does require the establishment of "a personal injury arising out of and in the course of employment." Where a claimant experiences symptoms that are consistent with the progression of a preexisting condition, the burden rests on the claimant to differentiate between the preexisting condition, which is not compensable, and the work-related injury, which is compensable. Where evidence of a medically distinguishable injury is offered, the differentiation is easily made and causation is established. However, where the symptoms complained of are equally attributable to the progression of a preexisting condition or a work-related injury, a plaintiff will fail to meet his burden of proving by a preponderance of the evidence that the injury arose "out of and in the course of employment"; stated otherwise, plaintiff will have failed to establish causation. Therefore, as a practical consideration, a claimant must prove that the injury claimed is distinct from the preexisting condition in order to establish "a personal injury arising out of and in the course of employment" under § 301(1). [*Rakestraw*, 469 Mich at 230-232 (footnotes omitted).]

Our review of the MCAC's opinion leads us to conclude that the MCAC erred when it found this matter to be controlled by *Rakestraw*. Unlike in *Rakestraw*, here, plaintiff did not argue that a work incident aggravated a preexisting condition. Rather, plaintiff argued that the two work incidents caused him to suffer from new injuries. Even though plaintiff had suffered prior injuries to his neck and back, his theory was not that the work incidents aggravated any preexisting conditions, but rather that he suffered new injuries at work and that his old injuries had healed prior to his work injuries. This testimony was supported by Dr. Peppler. On the basis of this testimony, we conclude that the MCAC erroneously faulted the magistrate for failing to engage in a *Rakestraw* analysis, and to then conduct a de novo review of the magistrate's factual findings. Accordingly, the MCAC erred when it reviewed the magistrate's findings of fact de novo and when it found that a *Rakestraw* analysis was relevant to this case.

The MCAC order reversing the magistrate is vacated and we remand for further proceedings consistent with this opinion.  Plaintiff having prevailed, may tax costs.  MCR 7.219.  We do not retain jurisdiction.

/s/ Stephen L. Borrello
/s/ Patrick M. Meter
/s/ Michael J. Riordan